May it please the Court, my name is Bill Drew. I represent Corbis Corporation. This is a duty to defend case, an insurance coverage case, to be decided under Washington State law. Because the allegations of the underlying complaints can be interpreted to trigger coverage, there is a duty to defend under Washington law, and the District Court should be reversed. The two underlying complaints against Corbis Corporation alleged garden variety defamation, invasion of privacy, and negligence. The insurance policies, which can be, the pertinent language can be found on page 567 of the blue brief, specifically cover personal injuries, including privacy rights. Well, counsel, the problem is you've got an exclusion in the policies for publishing, and Garson is pretty clear, isn't it? Even the complaint specifically refers to the publication. See, this is the crux of the case. Yes, that's why I asked the question. I was getting there. Okay. But the policy definition of publishing is not an ordinary definition of publishing. The policy defines publishing as creating and producing, and producing. So you must not only create it, produce it, but create it as well. And under Washington law, when a policy is defined, the insurance company has to live with the definition that they've used. And an exclusion is strictly construed in favor of the insured, in favor of coverage under Washington law. So what we have here is a complaint that alleges that Corbis and another defendant, Galaxy, Corbis supplied a photo that was taken by someone else, created by someone else, supplied it to Galaxy, then used it in a publication. So yes, you're right, the complaint is riddled with the word publication and publish. But you've got to cover the policy. And libel has as a critical element, publication. So just because they use the word publication doesn't mean that they've used it in a way that the policy excludes coverage for the business of publishing. Well, what's your specific point? Let me just read the whole phrase. Creating and producing any material in an electronic or printed format for distribution or sale to others for any purpose. Well, now, the creating or producing any material in electronic format, presumably that is the translation of the original image into something that can be seen on the web page, no? No. That would make every person who had a copy of the original image a copy of the original image. So we don't believe that the publishing definition in here is meant to cover any kind of online communication. I mean, if that were true, if that were the definition. Let's take it step by step. Sure. And you must stipulate, I stipulate that I'm an internet ignoramus. All right. There's a photograph of Mr. Garson. Yes. That is reproduced into a different form by your people. That's not in the complaint. Well, I mean, those words that I've used are not in the complaint. Nothing even resembling those words are in the complaint. What's happened is that you've taken, you've digitized in an electronic form, a photograph of Mr. Garson and put it on your website and then offered to sell it to someone, right? That isn't in the complaint either. It says that the photograph was taken by a photographer and it was transferred to Corpus. Transferred. It doesn't say how. It doesn't say who did this digitizing that you're talking about. That that in order to answer that question, you have to go outside the complaint to say who created this electronic image. What would you say the complaint stated about this process? In the Garson complaint, it says that the image was taken by a photographer and it was transferred to Corpus. And then it says Corpus sold it. Right. It doesn't say who did this. I mean, if the critical question is who digitized the photo, that's not in the complaint. And you can't read it into the complaint because we don't know. And St. Paul, not seeing it in the complaint, had an option of investigating and bringing a declaratory judgment action and evidence that Corpus created something that it then put on in terms of what you're suggesting St. Paul had a duty to do. Well, that's the duty under Washington law, under the Vanport case, the truck insurance for the Vanport homes. It says that when a complaint can be read, can be interpreted to trigger coverage, then a duty to defend is required. And if the insurance company wishes to go outside the exclusion of coverage, then it has a duty to bring a declaration. It has to defend under reservation of rights, but it can bring a declaration. The duty to bring a declaratory judgment action is under Washington statute? Not under Washington statutes, but under the case law. Under the case law. Yeah. It says that you cannot, as an insurer, go outside of a complaint to deny I think it says a little bit more than you've indicated. You said the photo was taken and it was transferred to Corpus and Corpus sold it. Paragraph 14 says Corpus placed Garson's picture on its internet web site. To do that, Corpus had to do something beyond take the paper photograph. It didn't get there by magic, right? So the allegation is that Corpus put the photograph on its website. It had to have digitized the photograph to get it there by some electronic means. That that isn't necessarily true, Your Honor. How did it get there by magic? Photographers these days take a lot of photos digitally. It doesn't say that the photograph that was taken by this professional photographer. I'll grant you that. If it's taken digitally, it's transferred onto the website. That is through some electronic means. Correct. Can it be done otherwise? Can a file be copied onto one thing to another without without electronic? It can be transferred from one electronic file, a disk to another electronic thing. But is that creating use of electronics? Right. By the copying from one computer to another. By the use of electronics, sir, in some form. I don't I don't understand how you're transforming or creating something without electronics. Electricity is useful. Sure. Electricity has to be done, right? Electricity is used. But does that mean that an image is created by Corpus? I say. Well, let me let me see if you're saying this. Because I'm even more primitive than Judge Are you saying that if the defendants here or the person at issue took a floppy disk taken by the a little more unsophisticated than in fact what you would do, that that does not constitute either creating or publishing? Well, it doesn't constitute publishing as defined by the policy narrowly defined by the policy as creating and producing. I'd say that the creator of what you're saying is that as long that it is possible here under the construing it generally broadly in favor of the duty to defend to argue that as a matter of logic, simple understanding of language, that putting the photographer's floppy disk or whatever digital format. Well, I've got a camera that does that. That little disk out of the camera and then just put it in and let your machine process that and then push the send button, that that does not constitute the activity which is excluded under this policy. That's correct. Because you don't create anything? That's correct. Because you are If you want to read creation that broadly, that copying one thing to another is creating for the purposes of the statute. You are you are broadly defining an exclusionary term, whereas creating an ordinary. I took a famous photo. Well, I saw Van Gogh the other day in the restaurant of print and simply took it and used the machine to make a print of it. Is that creating? Is a is a print of of a painting or photograph is making a print creating and then selling and publishing? You could define creating many is not could is. That's what I need to know. Isn't that of necessity under any understanding of the language of creating an act of creating to take any original work and make a print for say? That would be excluded under this policy, wouldn't it? Wouldn't know why. Well, I'd be and make a print. Are you talking? Well, if you're not, you have time to answer the question, but then you're sorry. I'm sorry. I don't know about that. That would help me understand whether on its face the transmitting because you don't send the floppy disk. You send something else which your machine sends on even under that pleading. The the the transmitting is is. We don't dispute that the website transmits. OK, it's about the the creation and what you've described is is more traditional publication where someone is making a print of something like a poster or something where we're talking about an image is posted on a website so that it could be sold and the image comes from the photographer. It's not created by us. We didn't take the photo. We didn't do anything. The photo it's posted onto the website and it's sold like a commodity. Now, are we in the business of publishing? Actually, the people who buy it. Counsel, I think your time has expired. Thank you very much. Thank you. I'm sorry. I'll hear from Ms. Anderson. Of the policy language. Is there any objection from the other side? Do you mind if I. No objection. Right. It doesn't. It's just got the pertinent policy provisions in it. All right. Go ahead. Can you introduce yourself for the record, please? May it please the Court. My name is Stephanie Anderson and I represent the police, St. Paul Fire and Marine in this coverage dispute. This case is a dispute really over one issue, whether in the context of the duty to defend Corbis's business activities include publishing, as stated in the personal injury coverage grant exception. Let's bring a little bit closer to yourself so that you don't have to go over there and you can use it. There we go. Or whether Corbis is in the business of publishing, as stated in the advertising injury exclusion such that St. Paul owes Corbis no duty to defend the actions against it. I have brought the excerpts of the pertinent policy language for you. I dragged this exhibit home on the bus last night. Is there any language that we haven't talked about? There is no language we haven't talked about, Your Honor. All right. Well, why don't you focus on that? We have the policy in the record. I wanted to – I guess I just wanted to say there's no case law in Washington or the Ninth Circuit on this issue, but there are two cases that have decided this issue, both Federal District Court, one in New York and one in Maine. And both of them found that the policy language, functionally identical policy language, was unambiguous and applied against insureds like Corbis that are not traditional publishers. They're not Random House or Scholastic Books. And those courts found that this exclusion negated the duty to defend. And I would also note that both of those cases, New York and Maine, require the insurer to determine the duty to defend by comparing the policy allegations to the complaint. When you say those two cases, New York and Maine, I assume you're talking about Schiff. Is that one of them? I'm talking about Schiff and DeLorme. And I want to speak briefly about them because I think their facts are compelling. Schiff was, as you know, a freelance writer who wrote an article published in Barron's magazine, Critical of Junk Art. He was sued for libel by somebody who he named in his article. And he tendered the defense to the CGL insurer who denied under the personal injury coverage grant publishing business exception. He sued his insurer for coverage, saying, I'm not a publisher, I'm a writer. This can't apply to me. The court disagreed, pointing out that a function of freelance writing is the publishing of that writing, and that the primary objective of a freelance writer is to have his work published. So Schiff, to me, is a very important case because Schiff was not even arguably a publisher, and the court applied the exclusion. In DeLorme, which is District of Maine 1999, DeLorme designed and sold atlases and maps over the Internet. And I want to stop right here because the design of atlas and maps, to me, is the whole argument of Corvus is that it didn't create anything. Well, DeLorme didn't create maps or atlases, but it designed maps and atlases and it sold them over the Internet. It designed them? Yes, that's what the decision said, that it designed and sold atlases and maps over the Internet. And to me, a map. If you add the word design, that adds. I didn't see your distinction between not creating and designing. Designing involves a creative process of some kind. Yes, it does. So that would be distinguishable from at least what had been alleged to be the fact. That is one part. But I guess the more important aspect of DeLorme, the one that really struck me, is that it was sued by Rand McNally for trademark infringement because it created some kind of tripmaker, and Rand McNally said, you infringed my trademark, I have something just like that. The most important aspect of that case is that there were no allegations of publishing. Rand McNally didn't sue DeLorme for anything. It didn't allege publishing in the complaint. Yet the court still found there was no duty to defend. So in my mind, you have Schiff, who's not a publisher, and the court applies the exclusion, and you have DeLorme, where there's no allegations that it published, and the court applied the exclusion. Now, counsel, what about these Washington cases that we heard about from Mr. Drew, which suggest, as he says, that it's up to the insurer to bring a declaratory judgment action when the issue is as narrow as this one is? Well, I'll do respect to opposing counsel. My reading of Vanport Holmes is that it says if an insurer is in doubt whether something is covered, it should bring a declaratory action. That's the right thing to do. But I would submit that in a case where St. Paul believed, looking solely at the allegations of the complaint and the policy, that the exclusions applied, there is no duty to bring a declaratory action. And as a public policy matter, I don't know that the courts want to be clogged up every time somebody denies a duty to defend with a declaratory judgment action getting affirmation. I thought we already were. Well, more clogged up. Counsel, would it make any difference, would it be analogously important in determining because the issue here is whether there's sufficient, is any ambiguity, because the duty to defend arises if there's ambiguity, right? The duty to defend, you do have to construe the complaint towards the insurer. Unless it's clear and unambiguous. Yes, unless it's clearly outside the policy. Would there be any doubt arise if the courts are struggling to define what the press is in the computer age under the First Amendment? I saw that. Have you thought about that? I saw that when I was researching this issue, that I think that because it's a – the Internet is fairly new, I think it does raise a lot of issues that are previously not covered. I thought it was interesting in the definition of publishing that they specifically mentioned electronic format. So I think the exclusion or the definition is trying to include that. But to answer your question, I don't think that that raises a question of ambiguity. I think you still only look to the policy and you only look to the complaint. Well, if you're looking to define the press, you're looking at some kind of press for the – in that sense, maybe analogous to publication. It's a synonym, at least, in some context. Yes. Would that be relevant at all in determining how – whether you'd be on notice that electronic transfer constitutes publication? I think that you would be – That is, if that is ambiguous in the constitutional context, that it might be ambiguous in the contract context. You know, I haven't researched the constitutional aspects of this, so I can't really speak to that. I do know that in the underlying action or in the – in the trial court, Corvus didn't raise – did not raise the issue of whether the definition was ambiguous. And, in fact, what I really see this issue as, honestly, is it's the word creating. I think if – I think producing, there's no question it produces it. I think this really comes down to what does the word creating mean. And that's right. You know, if you – you don't create a Van Gogh, but if you take a print of it and you digitize it and you change it and you put your watermark on it, like Corvus does, I would submit, and the trial court believed, that that is – that Corvus takes a product, changes it, and sells that changed product. It derives all of that from some fairly simple language in the complaint. The complaint doesn't describe that process. The complaint – both complaints – I think it was represented to us that it doesn't. Well, you know, I – again, with all due respect – So it's a lot of assumptions about how this particular person managed to get it into the hands of consumers. Well, with all due respect, courts are informed by common sense. And if somebody has drawn a copyrighted mural – I've got to tell you, at my age, computers are not common sense. Well, this isn't about computers. This is – in the Cervantes complaint, they drew a copyrighted mural on a San Francisco elementary school. And somehow that mural got on Corvus's website. And it couldn't have gotten on Corvus's website without some kind of process happening. And the common definition of creating is to bring into being. And something happened to get that mural from San Francisco to the website for sale to millions of people. And I would disagree with opposing counsel's assertion that this is a narrow definition of publishing, creating and producing any material in electronic or printed for distribution or sale to others for any purpose. I actually find that broad. I think really why we're here is what does the word creating mean? And I think about the Harry Potter books, which I have been reading. And it's like Scholastic didn't – didn't – didn't create J.K. Rowling's words, but it bound the books and it set the text and it produced it or published it. And to me, this is the Internet version of publishing what Corvus has done. And certainly, if Corvus had not taken – really what this is about is Corvus took these photos and artwork without asking permission. But if they hadn't published them so that they could be sold to other people, the cases wouldn't have – this case wouldn't have even come up. It wouldn't have ensued. So necessarily, they had to have taken something and changed it and readied it for sale, which is publishing. And that's where the harm came in. Your time has expired, counsel. Thank you very much. The case just argued will be submitted for decision. And we will now hear argument in Western States Paving v. Washington.
judges: McKay , O'scannlain, Bea